UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

JAMEAL THOMAS,

Plaintiff,

-v-

BARBARA SAMPSON,
sued in her official capacity,

Defendant.

No. 07-cv-13396-PJD-SDP
Hon. Patrick J. Duggan
Mag. Judge Steven D. Pepe

_______________________________/

**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS AND/OR SUMMARY JUDGMENT (Docket 63)**

Contrary to the *Report and Recommendation*'s finding (Docket 63), Plaintiff has stated a cause of action that his state-created liberty interest that his parole consideration will not be based solely on an arrest that did not result in a conviction was violated.

## *I. STATEMENT OF FACTS BASED ON AMENDED COMPLAINT*

On February 9, 2000, Plaintiff pled guilty in Oakland Circuit Court to seven counts of Stealing/Retaining a Financial Transaction Device, in violation of M.C.L. § 570.157N1; two counts of Illegal/Sale Use of a Financial Transaction Device in violation of M.C.L. § 750.157Q; and one count of Conducting a Criminal Enterprise in violation of MCL § 750.159I1.

On April 1, 2000, Plaintiff was arrested and charged with first-degree murder and felony firearm in connection with the shooting death of his youngest child's mother.

On April 14, 2000, Plaintiff was sentenced to a term of 13-20 years for Conducting the Criminal Enterprise and 1-4 years on the remaining charges; all to run concurrent. On April 20,

2001, Plaintiff was re-sentenced in Oakland Circuit Court to a term of 5-20 years on the Conducting a Criminal Enterprise charge and 1-4 years on the remaining counts; all to run concurrent.

On August 28, 2001, Plaintiff was acquitted by a jury of first- and second-degree murder and manslaughter. He was found guilty by the jury of felony firearm.

On June 20, 2005, then Parole Board member Enid Livingston conducted a parole board interview with Plaintiff. During this parole board interview, Ms. Livingston did not discuss the facts nor asked Plaintiff about the facts relating to the first-degree murder charge. Her only comment at the end of the interview was whether he had been acquitted of the first-degree murder charge, which he stated yes.

On July 1, 2005, Plaintiff received the “Parole Board Notice of Decision” stating that he had been denied parole and continued for two years. This decision was signed by Parole Board Members James Quinlan and Michael Berrios. On information and belief, since Ms. Livingston did not sign the denial, being the reviewing member, she had voted to grant a parole.

The notice of denial stated that “The Assaultive crime: Resulted in loss of life. Showed intent to permanently injure. Involved a family member or acquaintance. Involved the touching or discharge of a weapon.” Since none of the crimes that Plaintiff pled guilty to involved these facts, the decision to deny parole was based upon facts relating to the arrest for murder even though Plaintiff was found not guilty of that murder charge. Since Plaintiff was acquitted of any charges relating to an assaultive crime, the knowing use of this information to make a parole determination was arbitrary and capricious and violated a liberty interest. This determination of parole eligibility knowingly relied on erroneous information.

On April 20, 2007, Parole Board Member John Schlinker conducted another parole board hearing. At this hearing, Mr. Schlinker discussed only the crimes that Plaintiff was convicted of and not the murder charge he was arrested for and found not guilty of.

On or about May 25, 2007, Plaintiff received a "Parole Board Notice of Decision" which stated that he had been continued for another twenty-four months. This decision was signed by Parole Board Members Miguel Berrios and James Atterberry. On information and belief, since Mr. Schlinker did not sign the denial, being the reviewing member, he had voted to grant a parole.

This determination of parole eligibility was again based upon the knowing use of erroneous information that Plaintiff had engaged in an assaultive crime that resulted in the loss of a life. Since none of the crimes that Plaintiff pled guilty to involve such facts, the decision to deny parole was based upon facts relating to the arrest for murder even though Plaintiff was found not guilty of that murder charge. This denial also claimed that the property crime that Plaintiff was convicted of involved a gun and violence. Since the property crimes that Plaintiff pled guilty to did not involve such facts, the decision to deny parole was based upon the facts relating to the arrest for murder even though Plaintiff was found not guilty of that murder charge.[1]

On November 17, 2008, Plaintiff was denied parole for a third time. The members of the Parole Board signing the denial of parole were Stephen DeBoer and James Atterberry. At the parole board hearing, the individual parole board member did not discuss with Plaintiff that it

[1] Defendant agreed that this information was erroneous and granted a new parole hearing to the Plaintiff. This new hearing was the third determination of parole eligibility. However, agents of the Defendant continued to use the arrest that did not result in a conviction and the alleged confession that the jury rejected. Docket 45, attachment, Affidavit of Barbara S. Sampson, para. 4: "I have reviewed the Case Summary Report from Plaintiff Thomas' most recent parole consideration interview … the assessments noted in the property crime description are determined to be inaccurate." In para. 6 it states that Plaintiff will be given a new hearing.

was using the statement by the police officer that Plaintiff had confessed to binding and gagging and killing the victim in its determination of parole eligibility. Nor did that member discuss the fact that at trial the police officer testified Plaintiff had confessed and Plaintiff testified he had not confessed and did not kill the victim. Nor did the parole board member discuss that the jury found Plaintiff not guilty of first- and second-degree murder and manslaughter.

The reasons given for the denial of parole were that "P[laintiff] failed to take responsibility for all of the aspects of the criminal offense described in the PSI, to include confessing to bounding, gagging and shooting the victim. P remains a risk to the general public." Plaintiff's claims that this information contained in his prison file is false and was used as the reason in the determination that he was not parole eligible. Plaintiff has denied confessing to a police officer. In fact, the police officer testified at trial that Plaintiff had confessed and Plaintiff testified he did not confess nor did he murder anyone. The jury found him not guilty of first- and second-degree murder and manslaughter.

In making its determination of parole eligibility, the parole board members again referenced the loss of life, involvement of a family member, and involvement of a dangerous weapon. These statements are all fault and erroneous since Plaintiff had not been convicted of any crimes containing these facts.

## II. *LEGAL STANDARD FOR REVIEW OF A REPORT AND RECOMMENDATION*

The standard of review of objections filed to a report and recommendation is *de novo*. 28 U.S.C. § 636(b)(1) (C); Fed.R.Civ.P. 72(b)(3). *De novo* review requires a review of the evidence before the magistrate judge. The district court may not act solely on the basis of a magistrate judge's *Report and Recommendation*. *See Hill v. Duriron Co.,* 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court "may accept, reject, or modify, in whole or in

part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1) (c). The objecting party must "identify the portions of the magistrate's recommendation to which objection is made and the basis for the objection." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

**III *ARGUMENTS***

A. Plaintiff Has A State-Created Liberty Interest That His Parole Will Not Be Denied Based Solely On An Arrest That Did Not Result In A Conviction.

The *Report and Recommendation* does not reject Plaintiff's legal argument that he has a due process liberty interest in parole consideration created by M.C.L.A. § 791.235(3) (Docket 63, pages 10-11).[2] The *Report and Recommendation* finds that Plaintiff's liberty interest was not violated since the denial of parole was based on more than just an arrest that did not result in a conviction (Docket 63, at 10 "Yet, in all his parole denials, *several* reasons were given." (*italic* in original)).

The Sixth Circuit has held that Michigan's inmates do not have a liberty interest as to being paroled since the law grants discretion to the parole board when to release someone.[3] In *Williams v. Turner*, the court held that "the more complete lesson of *Greenholtz* is that, *though there is no inherent right to parole, a limited right to parole may be provided by applicable statutes.* The question in each case must turn on a careful examination of the particular statutes and regulations

[2] The *Report and Recommendation*, on pages 12-13, in discussing Plaintiff's claim that the parole board cannot use inaccurate information cites to Sixth Circuit cases that have found no liberty interest in parole but does not cite to these cases in analyzing Plaintiff's claim to a due process liberty interest. Plaintiff discuss *infra* his legal basis to a liberty interest created by M.C.L.A. § 791.235(3).

[3] *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (*en banc*) (laws of Michigan do not create a liberty interest in being released on parole), *cert. denied sub nom McGinnis v. Sweeton*, 503 U.S. 926 (1992). Neither *Sweeton* nor any of the decisions cited by the Defendants in their motion to dismiss have addressed the issue of the creation of a liberty interest pursuant to MCLA § 791.235(3).

governing parole in a given jurisdiction."[4] Plaintiff has claimed that the MCLA § 791.235(3) provides him a liberty interest that his determination for parole will not be based solely upon an arrest that did not result in a conviction.

In his lawsuit, the Plaintiff does not seek an order releasing him from prison on parole but is only seeking an order requiring the agents of the Defendant not to use information precluded by MCLA 791.235(3) in making its determination as to parole eligibility and from using information that is erroneous and false. Like the prisoners in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Plaintiff is not seeking a release on parole but only that his consideration be undertaken in a constitutional manner. In *Wilkinson*, the Court stated the lower courts can hear claims to challenges to parole procedures that will not result in release of inmate. *Id*. In the *Wilkinson* case, there was no claim to the existence of a liberty. *Id*. *See also Anyanwutaku v. Moore*, 151 F.3d 1053 (D.C. Cir. 1998) (held that an inmate's constitutional challenge alleging miscalculation of a parole eligibility date could be brought as a section 1983 action even though parole decisions in the District of Columbia were discretionary), cited favorably in *Dotson v. Wilkinson*, 329 F.3d 463, 468 (6th Cir. 2003 (en banc).[5]

In 1995, the United States Supreme Court significantly narrowed the decision it reached in *Hewitt v. Helms*[6], where it held that a liberty interest could be created by statute, rules or policy

---

[4] 702 F.Supp. 1439, 1448 (W.D. Mo. 1988) (citation omitted).

[5] *See also Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (even though no liberty interest in parole, court held sex offender classification that removed parole eligibility violated due process); *Beebe v. Heil*, 333 F.Supp.2d 1011, 1015-18 (D.Colo. 2004) (state law that requires the state to provide convicted sex offenders with a treatment program and makes parole eligibility contingent on completing it, creates a liberty interest, and that failure to provide the program could "shock the conscience" for purposes of substantive due process analysis); *see Green v. Black*, 755 F.2d 687, 688-89 (8th Cir. 1985) (holding that exclusion from sex offenders program that resulted in parole ineligibility might violate a state-created liberty interest).

[6] *Hewitt v. Helms*, 459 U.S. 460 (1983) (state created liberty interest when statute, rules or regulation contained mandatory language and substantive predicates). *See also Howard v. Grinage*, 82 F.3d 1343

directives if they obtained mandatory language and substantive predicates. In *Sandin v. Conner*, the Court stated an inmate has a liberty interest entitled to protection under the federal constitution when a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life."[7] In *Wilkinson v. Austin*, the Supreme Court again affirmed that a liberty interest could be created by a state statute, regulation or policy, but that liberty interest also had to impose an atypical and significant hardship in relation to the ordinary incidents of prison life.[8]

Courts have held that parole practices and procedures that are set out in statutes or regulations can create liberty interests.[9] Parole statutes in some states have been held to create a liberty interest.[10] Once a statute creates a liberty interest, actions by the parole board that makes prisoners ineligible for parole have been held to deprive them of a liberty interest.[11]

---

(6th Cir. 1996) (prison officials would be liable to inmate if they acted intentionally or with deliberate indifference to his liberty interests in deciding to place him in protective segregation and increased security confinement); *Todaro v. Bowman*, 872 F.2d 43, 48-9 (3d Cir. 1989) (regulation barring punishment unless an inmate violated prison rules, combined with mandatory procedural regulations, created a liberty interest protected by due process).

[7] 515 U.S. 472, 485 (1995).

[8] *Id*. at 222 ("We have also held, however, that a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).").

[9] *Jago v. Van Curen*, 454 U.S. 14, 19-21 (1981) (" 'The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising clemency.' " *id*. at 20 n. 2 (citation omitted)); *Barna v. Travis*, 239 F.3d 169, 170-71 (2d Cir. 2001) (per curiam); *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940, 941 n.3 (11th Cir. 1982); *see Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465 (1981) (same holding as to commutation of sentences).

[10] *Board of Pardons v. Allen*, 482 U.S. 369, 376-80 & n.10 (1987) and cases cited; *Sass v. California Bd. of Prison Terms,* 461 F.3d 1123, 1127-28 (9th Cir. 2006); *Bermudez v. Duenas*, 936 F.2d 1064, 1067 (9th Cir. 1991) (per curiam); *Felce v. Fiedler,* 974 F.2d 1484, 1490-92 (9th Cir. 1992); Sonntag v. *Paparozzi*, 256 F.Supp.2d 320, 325 (D.N.J. 2003), *aff'd as modified*, 94 Fed.Appx. 970 (3rd Cir. 2004); *Stogsdill v. Board of Parole*, 342 Or. 332, 336-37, 154 P.3d 91 (2007); *see Cooper v. South Carolina Dept. of Probation, Parole and Pardon Services*, 661 S.E.2d 106, 111-12 (S.C. 2008) (prisoner had liberty interest in having parole board decide based on the factors dictated by the state parole statute).

[11] *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (parole ineligibility was one factor making placement in "supermax" prison the deprivation of a liberty interest); *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir.

In this matter, Plaintiff is claiming that he has a state-created liberty interest based upon MCLA § 791.235(3). To determine whether there is a liberty interest, courts look in statutes and regulations for "mandatory language" (the words that limit officials' discretion, often words like "shall," "will," or "must") and "substantive predicates" (the conditions or circumstances that must exist in order for prison officials to take a certain action, like deny parole or place a prisoner in administrative segregation).[12]

In deciding whether a liberty interest arises under the laws of a State, the Supreme Court closely examines the language of the State's relevant statutes and regulations.[13] "Stated simply," the Court explained, " 'a State creates a protected liberty interest by placing substantive limitations on official discretion.' "[14] As the Supreme Court further advised:

> "A state may do this in a number of ways ... the most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision-making ... and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met."[15]

In order to find that a liberty interest arises under a State's laws, the Supreme Court has required "that the regulations contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow."[16]

---

1997) (sex offender classification that removed parole eligibility); *Beebe v. Heil*, 333 F.Supp.2d 1011, 1015-18 (D.Colo. 2004) (state law that requires the state to provide convicted sex offenders with a treatment program and makes parole eligibility contingent on completing it, creates a liberty interest, and that failure to provide the program could "shock the conscience" for purposes of substantive due process analysis); *see Green v. Black*, 755 F.2d 687, 688-89 (8th Cir. 1985) (holding that exclusion from sex offenders program that resulted in parole ineligibility might violate a state-created liberty interest).

[12] *See Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983); *accord*, *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989); *Board of Pardons v. Allen*, 482 U.S. 369, 374-80 (1987).

[13] *Hewitt v. Helms*, 459 U.S. at 461.

[14] *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462 (1989) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

[15] *Id.* (citing *Hewitt*, 459 U.S. at 472).

[16] *Id.* (quoting *Hewitt*, 459 U.S. at 471-72).

Michigan has created a liberty interest that a parole determination will not be based solely upon a prior arrest that did not result in a conviction. M.C.L.A. § 791.235(3) states:

> (3) The parole board may consider but **shall not base a determination to deny parole soley** on either of the following:
> (a) A prisoner's martial history.
> (b) **Prior arrests not resulting in conviction** or adjudication of delinquency.

(**Bold** emphasis added.) This statute contains both mandatory language and a substantive predicate.

The word "shall" in this statute imposes mandatory duty that the "parole board … shall not base a determination to deny parole solely on … [p]rior arrests not resulting in conviction…."[17] Further support for the mandatory nature of this statute is found in the use of the word "solely." The statute goes on to state that the determination to deny parole cannot be based "solely" on an arrest that does not result in a conviction. This statute gives no discretion to the parole board to use an arrest which does not result in conviction as the sole reasons for denying parole.[18] This is what the parole board has done in this case.

B. Contrary To The *Report And Recommendation*, Defendant's Agents Have Based Their Denial Of Consideration For Parole On The Arrest That Did Not Result In A Conviction.

[17] *See, e.g., Matovski v. Gonzales*, 492 F.3d 722, 736 (6th Cir. 2007) ("the language found within 8 U.S.C. § 1154(j), 'shall remain valid,' is mandatory not discretionary."); *Manuel v. Gill*, 481 Mich. 637, 647, 753 N.W.2d 48, 55 (2008) (the term "shall," which is considered "mandatory"); *LundBerg v. Corrections Commission*, 57 Mich.App. 327, 225 N.W.2d 752 (1975) (Use of term "shall" in a statute means that statute is mandatory unless other considerations compel a contrary conclusion.).

[18] Further support for the existence of a liberty interest is found within MDOC's policy directives. The authority, in part for the MDOC creation of Policy Directive 06.05.104 is MCLA § 791.235(3). This PD provides, at p. 4, § U, that the parole board cannot use "any other information unless provided by law." The authority for the implementation of the parole guidelines, Policy Directive 06.05.100, § C, is, in part, also based on MCLA § 791.235(3). This policy states that "One [parole guideline] form shall be prepared for each docket number, however, it shall contain information about all offenses for which the offender was convicted under that docket number." Neither policy allows the use of arrests that did not result in convictions.

The *Report and Recommendation* does not reject Plaintiff's legal argument that he has a due process liberty interest in parole consideration created by M.C.L.A. § 791.235(3) (Docket 63, pages 10-11).[19] The *Report and Recommendation* finds that Plaintiff's liberty interest was not violated since the denial of parole was based on more than just an arrest that did not result in a conviction (Docket 63, at 10 "Yet, in all his parole denials, *several* reasons were given." (*italic* in original)). It is Plaintiff's contention that the *Report and Recommendation* is wrong in its finding that more than the arrest which did not result in a conviction was used to deny parole.

Presently Plaintiff is challenging the most recent denial of Parole that is dated November 17, 2008 (attached as Plaintiff's Objections, Exhibit 2). Plaintiff concedes that on Exhibit 2 that agents of the Defendants listed more than one reason in support of denial of parole. However, the "Case Summary Report" contains the basis for the denial of parole and the decisions first made by the two parole members who denied parole and granted a 24 months continuance (attached as Plaintiff's Objection, Exhibit 1, pages 1, 7 and 14). The decision reflected in the "Case Summary Report" was then transpose to the "Notice of Parole Board Action (Exhibit 2). The "REASONS IN SUPPORT OF PAROLE BOARD ACTION:" are the same reasons listed on the "Case Summary Report." However, the difference between the two set of reasons on the two different Exhibits is that on the "Case Summary Report" these parole board members stated that the reasons were not used in making their decisions to deny parole but on the Parole Board Notice of Action they then list as the reasons to support the denying of parole on Exhibit 2 the same reasons found earlier not to support a denial of parole.[20]

---

[19] The *Report and Recommendation*, on pages 12-13, in discussing Plaintiff's claim that the parole board cannot use inaccurate information cites to Sixth Circuit cases that have found no liberty interest in parole but does not cite to these cases in analyzing Plaintiff's claim to a due process liberty interest. Plaintiff discuss *infra* his legal basis to a liberty interest created by M.C.L.A. § 791.235(3).

[20] Plaintiff's filed a Rule 56(f) motion (Docket 59), which was denied (Docket 62), to undertake discovery

Plaintiff will compare each similar section of the reason not used to deny parole on Exhibit 1 with the reasons give in support of denying parole listed on Exhibit 2. This will demonstrate that in Exhibit 1 Defendant's agents did not use the reasons to deny parole that are listed in Exhibit 2 to support the denial of parole. The same agents of Defendant cannot state a factor is not used to deny parole and then in another document use the same factor to support the denial of parole.

*1. <u>The first comparison is the reasons listed under "The assaultive crime."</u>*

A review of the "Case Summary Report" shows, on page 1 of Exhibit 1, that parole board member Atterberry, voted for a continued for 24 months. The next seven pages of the summary are factors that were considered by Atterberry and deciding whether to parole or not. On page 1, it states under "**Assessments: *** The assaultive crime**" the following:

> Resulted in loss of life
> Involved a dangerous weapon(s)
> Involved a family member of acquaintance
> Involved the touching with or discharge of a weapon
> "A-4" 4/1/00,Wayne Co., 27y old V (Shaw Moore) & P had child together. V went to P's home to pick up money for the child. V had concerns & asked friends to call her every 10-15 minutes. Argument ensured, P bound & gagged V & fatally shot her in the head. (Not used as reason)

On Page 7 of Exhibit 1 it shows that the actual interviewer for parole was Stepher DeBoer, who also voted for a continue 24 months. On page 8, the same identical reasons above are listed; no variation in words. All of these factors are related to the crime which Plaintiff was found not guilty of.

After the listing of the above factors, the parole board members than listed the factual basis to support these factors. As part of the factual basis, the parole board members than state that that the facts listed are "(Not used as reason)". If the factual basis for the reasons were not the

---

to resolve this conflict that in Exhibit 1 it states that the reasons given for denial of parole are not used for such but in Exhibit 2 these "not used reason" are listed to support the denial of parole. On March 8, 2009, Plaintiff filed an appeal of the *Order* denying the Rule 56(f) motion, *see* Docket 64.

basis to deny parole, then the individual reasons cannot be either since reasons are to be supported by facts.

On Exhibit 2, the Notice of Parole Denial, the first set of reasons given are the same as the above listing but without a factual rendition of the not guilty murder charge. The below listings are the same that were stated "not used as reason."

> **<u>Crime & Criminal Behavior</u>**
> **The assaultive crime**:
> Involved the touching with or discharge of a weapon
> Involved a dangerous weapon(s)
> Resulted in loss of life
> Involved a family member or acquaintance

It seems that in the "Case Summary Report" Defendant's agents have stated that none of the above reasons were used in making the decision to deny parole and then they want to turn around and list these rejected reasons in the "Notice of Parole Board Action" to support the denial of parole.

All of these factors are related to the crime of murder which Plaintiff was found not guilty of. As discussed *supra*, Plaintiff has a liberty interest that an arrest not resulting in a conviction will not be the sole basis for denial of parole. M.C.L. § 791.235(3). If it is determined that these are the only valid reasons given for denial of parole, the Court would be required to find that Plaintiff's liberty interest was violated.

*2. <u>The second comparison is to reasons listed under "The property crime.</u>"*

On Exhibit 1, the next reason given for support of denial of parole is listed under "The property crime:

> **The property crime**:
> Involves the intent to defraud another
> Included taking or loss of property 0/$1000
> Shows betrayal of trust

> "A-1", Conducting Criminal Enterprise, Oakland Co., Co-def., who worked for Standard Federal Bank, copied approx. 80 credit applications and sold them to P. The P paid $50 per application. This activity occurred between 11/98 to 4/99. P then used this credit information to purchase expensive M/V's, computers, and other items. P also obtain credit cards in these persons' names. The co-def. was compensated approx. $4,000 for her part. (Not used as reason)

On page 8, the same identical reasons above are listed; no variation in words.

After the listing of the above factors, the parole board members than listed the factual basis to support these factors. As part of the factual basis, the parole board members than state that that the facts listed are "(Not used as reason)". If the factual basis for the reasons were not the basis to deny parole, then the individual reasons, such as "shows betrayal of trust," cannot be either since the conclusion of "shows betrayal of trust" cannot exist without a factual basis. Without a factual basis, the parole board members cannot have a conclusion.

On Exhibit 2, the Notice of Parole Denial, the first set of reasons given are the same as the above listing but without a factual rendition of the not guilty murder charge. The below listings are the same that were stated "not used as reason."

> **The property crime**:
> Involves the intent to defraud another
> Included taking or loss of property 0/$1000
> Shows betrayal of trust

It seems that in the "Case Summary Report" Defendant's agents have stated that none of the above reasons were used in making the decision to deny parole and then they want to turn around and list these rejected reasons in the "Notice of Parole Board Action" to support the denial of parole.

*3. The third comparison is to reasons listed under "The prisoner has a criminal history."*

On Exhibit 1, the next reason given for support of denial of parole is listed under "The prisoner has a criminal history."

**The prisoner has a criminal history**:
Of violent misdemeanors
Including a weapon or weapons
Of assaultive conviction(s) as juvenile
Of a crime that resulted in loss of life
Involving similar behavior to current offense
4 fe., 1 misd. Includes Domestic Violence and CCW. Terminated off record 02 Fin Device Use 7-27-05. Record 03 Violation of Credit Law 7-27-05 Felony Firearm 5-5-05 (Court discharged w/time served). Juvenile: Manslaughter, and RSCP 0/$100 (Not used as reason)

On page 8, the same identical reasons above are listed; no variation in words.

After the listing of the above factors, the parole board members than listed the factual basis to support these factors. As part of the factual basis, the parole board members than state that that the facts listed are "(Not used as reason)". If the factual basis for the reasons were not the basis to deny parole, then the individual reasons, such as "shows betrayal of trust," cannot be either since the conclusion of "shows betrayal of trust" cannot exists without a factual basis. Without a factual basis, the parole board members cannot have a conclusion.

On Exhibit 2, the Notice of Parole Denial, the first set of reasons given are the same as the above listing but without a factual rendition of the not guilty murder charge. The below listings are the same that were stated "not used as reason."

**The prisoner has a criminal history**:
Involving similar behavior to current offense
Of a crime that resulted in loss of life
Of assaultive conviction(s) as juvenile
Including a weapon or weapons

It seems that in the "Case Summary Report" Defendant's agents have stated that none of the above reasons were used in making the decision to deny parole and then they want to turn around and list these rejected reasons in the "Notice of Parole Board Action" to support the denial of

parole. If the reasons are not used to deny parole, they cannot be used to support a denial of parole.

4. *The fourth comparison is to reasons listed under "The prisoner has a criminal history" of the category of "**Crime & Criminal Behavior**."*

On Exhibit 1, the reason given for support of denial of parole is listed under "The prisoner has a criminal history."

> **The prisoner has a criminal history**:
> Of violent misdemeanors
> ● * *
> 4 fe., 1 misd. Includes Domestic Violence and CCW. Terminated off record 02 Fin Device Use 7-27-05. Record 03 Violation of Credit Law 7-27-05 Felony Firearm 5-5-05 (Court discharged w/time served). Juvenile: Manslaughter, and RSCP 0/$100 (Not used as reason)

On page 8, the same identical reasons above are listed; no variation in words.

After the listing of the above factor, the parole board members than listed the factual basis to support this factor. As part of the factual basis, the parole board members than state that that the facts listed are "(Not used as reason)". If the factual basis for the reason was not the basis to deny parole, then the individual reason, such as "Of violence misdemeanors," cannot be either since the conclusion of a criminal behavior "Of violence misdemeanors" cannot exists without a factual basis. Without a factual basis, the parole board members cannot have a conclusion.

On Exhibit 2, page 2, the Notice of Parole Denial, the reason given under "Crime & Criminal Behavior" is the same as the above listing but without a factual rendition. The below listing is the same that was stated "not used as reason."

> **Crime & Criminal Behavior**
> **The prisoner has a criminal history**:
> Of violent misdemeanors

It seems that in the "Case Summary Report" Defendant's agents have stated that the above reason was not used in making the decision to deny parole and then they want to turn around and list this rejected reason in the "Notice of Parole Board Action" to support the denial of parole. If the reason was not used to deny parole at the parole hearing, they cannot be used to support a denial of parole in the Notice of Parole Board Action.

Plaintiff has sought discovery to delve into the above inconsistency between the "Case Summary Report" listings of "not used as reason" and the Parole Board used of these not used reasons to support the denial of paorle. For dispositive motion purposes, Plaintiff's complaint "… contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The viable legal theory is that he has a liberty interest created by M.C.L.A. § 791.35(3), as discussed *infra*.

Plaintiff established a liberty interest that the determination to deny parole would not be based solely on an arrest that did not result in a conviction. The parole board used the factual basis of Plaintiff's arrest for murder, which he was found not guilty of, as the sole reason in its determination to deny parole.

C. Contary To The Report And Recommendation, Once A Liberty Interest Is Created The Parole Board Cannot Use Erroneous Information In Its Decision To Deny Parole.

The *Report and Recommendation* is wrong in its statement that Plaintiff is claiming a liberty interest to be released on parole (Docket 63, page 12, and cases cited). Plaintiff is claiming a liberty interest in regards to parole consideration and not release. Once Plaintiff established a liberty interest in relation to his not being considered for parole based solely on an arrest not resulting in a conviction, agents of the Defendant are precluded from the use of erroneous

information pertaining to that arrest to deny parole. The Sixth Circuit recognizes this right in its 1986 decision in *Perotti v. Marshall*.[21]

In *Perotti*, the inmate had contended that his prison file contained erroneous information and it "would affect his parole eligibility."[22] The Sixth Circuit recognized that "a prisoner has a limited right to have erroneous information expunged from his file."[23] The Court held that to state a claim the inmate must allege three factors:

> (1) certain information is in the prison file; (2) the information is false and (3) the information is relied on to a constitutionally significant degree. *Paine, supra*.[24]

Plaintiff has alleged that erroneous information is contained in his prison file; that this information is false; and that the information has been relied on in the Parole Board's consideration of him for parole. Plaintiff has stated a claim for violation of his rights.

In the motion for dismissal, Defendant has claimed that since the information is contained in the presentence investigative report that the Parole Board is allowed to use that information. This statement is contrary to the decision by the United States Supreme Court in *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*,[25] where the Court held that inmate Walker had a substantive due process right to have parole decisions made based on accurate information.[26]

The Report and Recommendation states that "[i]f Plaintiff disagrees with the information contained in his PSI, then he must challenge that information in the Michigan criminal court. Plaintiff has not come forward with any case law stating that the Parole Board cannot consider

---

[21] 787 F.2d 592, 1986 WL 16695 (6th Cir. 1986) (unpublished), see attached Exhibit 3. *Cf. Pruett v. Levi*, 622 F.2d 256 (6th Cir. 198).
[22] *Perotti*, *supra* at * 1.
[23] *Id.*, citing to *Paine v. Baker*, 595 F.2d 197 (4th Cir.), *cert. denied*, 100 S.Ct. 263 (1979).
[24] *Id.*
[25] 442 U.S. 1 (1979).
[26] *Id.* at 19 (Powell, J., concurring in part and dissenting in part).

the PSI." (Docket 63, page 11.) However, in making that statement, the *Report and Recommendation* ignores M.C.L.A. 791.235(3), which prevents the use of an arrest that does not result in a conviction as the sole consideration of parole. Therefore, if the PSI has false or misleading information about an arrest that did not result in a conviction, he can challenge that through this lawsuit.

On November 17, 2008, Plaintiff received his third denial of parole and another twenty-four month continuances. In its determination whether to parole, the Board stated that his present crime consisted of a dangerous weapon, the touching or discharge of that weapon, the taking of a life and involved an acquaintance. A review of the PSI report prepared for the fraud convictions does not mention that Plaintiff had touched or discharged the weapon, that a dangerous weapon was involved, that his actions had resulted in the loss of a life, or he had harmed a family member or acquaintance. See Docket 24, pages 30-42. These suppositions by agents of the Defendant came from their extrapolating from the PSI report that Plaintiff had confessed to binding, gagging and murder. See Docket 24, at page 21. These are the factual basis of the charge of murder that Plaintiff was found not guilty of.

Contained in the MDOC's Therapy Termination Report is a statement by the therapist that the members of the Parole Board had before it each time it used the arrest that did not result in a conviction to deny parole. This statement is that "A jury exonerated Mr. Thomas; regarding the murder of his son's mother." Docket 24, at 13. Further, the Parole Eligibility Report (PER) that was prepared on 5/13/05 only lists under felony firearm that Mr. Thomas's vehicle was impounded at the airport and a gun was found. Docket 24, at 16. There is no description of a binding, gagging or murder. It was not until the PER that was prepared on 1/8/2007 that there is

any mention that "Thomas had bound and gagged the victim and then shot her in the head."[27] This is what Plaintiff was found not guilty of doing. Yet, agents of the Defendants use this information as the sole reason to deny parole.

As a result of the use of the underlying facts of the arrest for murder that did not result in a conviction, Plaintiff was recently denied parole solely based on the facts underlying the arrest. Each time Plaintiff has been denied parole in violation of this liberty interest, his length of incarceration has been extended by two years. Plaintiff is asking for a parole hearing where this erroneous information cannot be used.

WHEREFORE, for the reasons stated, this Court should reject the *Report and Recommendation* and allow Plaintiff to engage in limited discovery to develop this lawsuit.

Respectfully submitted,

/s/ Daniel E. Manville
Daniel E. Manville
Counsel for the Plaintiff
P.O. Box 20321
Ferndale, MI. 48220
248-890-4720
248-556-5598
daniel.manville@gmail.com

**PROOF OF SERVICE**

I, Daniel E. Manville certify, under penalty of perjury, that on 3.92009 I caused a copy of the above document to be faxed and to be served by electronic filing on Defendant's Attorney, Kevin Himebaugh, Department of Attorney General, Box 30217, Lansing, MI 48909; himebaughk@michigan.gov.

/s/ Daniel E. Manville
Daniel E. Manville

---

[27] This report was prepared after Plaintiff sued members of the Parole Board. This information was added to this PER to try and cover the unconstitutional acts of the Defendants. The first PER more accurately reflect what is required by MCLA 791.235(3).